**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ANIKA HUNTE, AS ADMINISTRATOR OF THE ESTATE OF ARIES PETERSON, a minor, <br><br> ANIKA HUNTE, INDIVIDUALLY, and <br><br> DANE PETERSON, INDIVIDUALLY, <br><br>                Plaintiffs <br><br>    v. <br><br> ABBOTT LABORATORIES, INC., <br><br>                Defendant. | Civil Action No. 3:20-cv-1626 (SRU) <br><br> Chief Judge Stefan R. Underhill <br><br><br><br> April 1, 2021 |

**ABBOTT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS AND STRIKE**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ....................................................................................................... 3

    A.    The *Ferry* case ................................................................................ 3

    B.    The *Hunte* case ............................................................................... 4

ARGUMENT ............................................................................................................ 5

    I.    This Court should apply its *Ferry* rulings here. ........................... 5

    II.    Plaintiffs admit the infant's injuries were not caused by any failure to warn ..................................................................................................... 6

    III.    Plaintiffs cannot state a claim based on Abbott's marketing. ................ 8

        A.    The Product Liability Act preempts Plaintiffs' marketing claims. ............. 8

        B.    Abbott's marketing caused no injury. ....................................... 9

        C.    Abbott did not engage in an unfair trade practice. .................... 10

CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batoh v. McNeil-PPC,*
    167 F. Supp. 3d 296 (D. Conn. 2016) ...................................................................................7

*Childs v. Uplift Mobility Prods.,*
    2010 WL 796754 (Conn. Super. Ct.) ................................................................................9

*Ferry v. Mead Johnson and Abbott Laboratories,*
    3:20-cv-00099-SRU (D.N.H.) ................................................................................ *passim*

*Gerrity v. R.J. Reynolds Tobacco.*
    263 Conn. 120 (2003) .........................................................................................................8

*Karavitis v. Makita U.S.A.,*
    243 F. Supp. 3d 235 (D. Conn. 2017) ...................................................................................7

*Provost-Daar v. Merz N. Am.,*
    2014 WL 1193481 (Conn. Super. Ct.) ................................................................................9

*Whitting v. Eli Lily,*
    2007 WL 2757122 (Conn. Super. Ct.) ................................................................................9

**Statutes**

Conn. Gen. Stat. § 52-572m ...............................................................................................8

Conn. Gen. Stat. § 52-572n ................................................................................................8

Conn. Gen. Stat. § 52-572q ................................................................................................7

Connecticut Product Liability Act ...............................................................................2, 8, 9

Connecticut Unfair Trade Practices Act ....................................................................5, 8, 11

Infant Formula Act ...............................................................................................................3

## INTRODUCTION

The present case is very similar to another case in this Court: *Ferry v. Mead Johnson and Abbott Laboratories*. Both cases allege that premature infants in the neonatal intensive care unit at Yale New Haven Hospital became infected with necrotizing enterocolitis, or NEC, because their doctors gave them Abbott's special exempt formulas for premature infants to try to help them grow and thrive. Those formulas are made using cow milk, which both cases blame for the infection. Both cases were filed by the same lawyers, and the same lawyers are defending Abbott.

In *Ferry*, this Court has already ruled on Abbott's motion to dismiss and Abbott's motion to strike, and it is considering the plaintiff's motion for leave to file a fifth amended complaint.[1] But Plaintiffs here ignore those rulings. Their amended complaint contains some of the same claims this Court dismissed in *Ferry*, and it makes some of the same assertions that this Court has already stricken in *Ferry*. The complaint here should have conformed to the obviously applicable *Ferry* rulings, but it has not happened.

Reluctantly, therefore, Abbott must again move to dismiss and strike. This motion asks the Court to apply the *Ferry* rulings here and separately address only the dismissal arguments that are unique to this case. Those arguments are about the amended complaint's failure to warn claim and its claims based on Abbott's marketing. In addition, Abbott asks the Court to strike various unnecessary and improper allegations, referencing back to this Court's prior ruling and Abbott's prior submissions without repeating those arguments here.

Plaintiffs, who are the infant's parents, assert that Abbott failed to warn them that the formula would hurt the infant, so they did not know to refuse to allow the doctors to administer it.

---

[1] A few hours before Abbott filed this motion to dismiss the *Hunte* case, the plaintiff in *Ferry* filed a notice of voluntary dismissal. Abbott is analyzing the filing and the circumstances under which it was made, and in short order will request a status conference with the Court.

But in a lawsuit they filed against the hospital, they *admitted* that the mother *did* refuse: she "expressly instructed [the hospital staff] that her baby not be fed cow-based products," but the doctors decided to administer the formulas anyway. Given that the mother had already reached the conclusion that cow milk formulas were dangerous to the infant, and given that she had already refused to allow them to be used, adding more warnings obviously would not have caused her to behave any differently. Plaintiffs therefore cannot establish that any failure to warn them caused any injury.

In addition, neither parent saw the warnings that Abbott gave on its formulas. Having not looked at the warnings at all, they cannot claim they were misled by content they say was missing from those warnings. Again, any failure to warn cannot have caused any injury. The failure to warn claim should be dismissed.

Plaintiffs' causes of action about Abbott's marketing, the allegations about which they lifted from the *Ferry* proposed fifth amended complaint, should also be dismissed for several reasons. First, the Connecticut Product Liability Act explicitly preempts claims based on injuries alleged to result from the marketing of a product. Second, the allegations have no connection to this case and are legally irrelevant because they concern products that were never fed to the infant, or they concern marketing statements that Plaintiffs never saw or relied on. Third, Plaintiffs have painted a false picture in which Abbott supposedly discourages breast feeding in favor of formula. In reality, Abbott describes formula as "second best" to human breast milk, Abbott provides breast feeding education to the parents of premature infants, and Abbott encourages breast feeding because "breastmilk protects against NEC."

For all of these reasons and those stated in *Ferry* and below, this Court should dismiss with prejudice the entire amended complaint except for the design defect claim on which the Court deferred ruling in *Ferry*, and this Court should strike the allegations identified below.

## BACKGROUND

**A.    The *Ferry* case**

This Court is familiar with the dispute in *Ferry v. Mead Johnson and Abbott Laboratories*, 3:20-cv-00099-SRU. In *Ferry*, the plaintiff alleges that cow milk in exempt infant formulas made by Abbott and Mead Johnson caused a premature infant in the neonatal intensive care unit at Yale New Haven Hospital to become infected with necrotizing enterocolitis and die.

Both Defendants moved to dismiss, and, after extensive briefing and argument, this Court issued a comprehensive ruling. (*Ferry*, Dkt. 87.) This Court held: (1) Connecticut law did not shed light on whether the learned intermediary doctrine should be applied to exempt infant formulas, so the parties would take limited discovery on the issue, which this Court will certify to the Connecticut Supreme Court; (2) whether the Infant Formula Act preempted design defect claims was a close question that would be deferred pending factual development and further briefing;[2] and (3) none of the website printouts that plaintiff submitted could help him state a claim, nor did the plaintiff give the defendants the required pre-suit notice of any breach of warranty claim, so the claims for misrepresentation and breach of express and implied warranties were dismissed with prejudice. *Id.*

---

[2] After a later conference in *Hunte*, this Court entered an order recounting that in both cases "the parties represented that they are engaged in preliminary discussions regarding limited discovery on threshold issues in this case…. I ordered the parties to meet and confer regarding a plan for that focused and limited discovery." (Dkt. 37.) Preemption was one of those threshold issues.

Later, the plaintiff moved for leave to file a fifth amended complaint. This Court was considering that motion when the plaintiff filed a notice of voluntary dismissal. (Dkt. 116.)

## B.     The *Hunte* case

There are two *Hunte* cases. In the first, the infants' parents sued Yale New Haven Hospital. (Their third amended complaint is attached hereto as Ex. 1.) There, Plaintiffs admit that the mother discussed formulas with the hospital's staff, and she "***expressly instructed [them] that her baby not be fed cow-based products***." (*Id*. ¶ 9.) But the staff disregarded her instruction, "***[f]ailed to provide the Mother or Father with a choice as to whether their child should be given cow based fortifier and/or formula***," fed the infant several cow milk products that were "administered by the Defendant as a medical procedure," and thereby caused necrotizing enterocolitis and death. (*Id*. ¶¶ 10, 12–16; Count One ¶¶ 40–43; Count Three ¶¶ 40–43; Count Five ¶¶ 39(c), 40; Count Six ¶¶ 39(c), 40 (emphasis added).)

In the second *Hunte* case—the present case, against Abbott—the same Plaintiffs admit that the infant's doctors made the decision to administer cow milk formulas. (Am. Compl. ¶ 173.) Their amended complaint acknowledges the warnings Abbott gave with its formulas (*id.* ¶¶ 81, 89), but Plaintiffs ***never*** allege that either parent ever saw the warnings.

When Plaintiffs filed the present case, they identified it as a related case to *Ferry*. (Dkt. 1 at 1.) It was then transferred to this Court for all further proceedings. (Dkt. 19.) The two cases have been discussed together in a pretrial conference with this Court. (Dkt. 37.)

As in *Ferry*, the premature infant in *Hunte* is alleged to have become infected with necrotizing enterocolitis and died as a result of doctors administering Abbott's cow milk exempt formulas while the infant was in the neonatal intensive care unit at Yale New Haven Hospital. (Am. Compl. ¶¶ 1–2, 67–68.) The same lawyers represent the *Ferry* and *Hunte* plaintiffs, and the same lawyers represent Abbott in both cases.

The most recent complaints and allegations in the two cases are substantively the same, aside from some plaintiff-specific information that is irrelevant to this motion, such as when each infant was born, as well as allegations in *Ferry* about Mead Johnson (which is not a defendant in *Hunte*). The complaints have matching sections about "The Science" and Abbott's marketing. (*Compare Ferry* Proposed Fifth Am. Compl., Dkt. 107-2 ¶¶ 29–46, 61–70, 193–294 *to Hunte* Am. Compl. ¶¶ 8–66.) And each cause of action asserted in *Hunte* was asserted in the *Ferry* fourth amended complaint, on which this Court has already ruled, except that *Hunte* adds a claim for a violation of the Connecticut Unfair Trade Practices Act.[3] That claim is based entirely on allegations about Abbott's marketing that are lifted almost verbatim from the *Ferry* proposed fifth amended complaint.[4]

## ARGUMENT

### I. This Court should apply its *Ferry* rulings here.

Abbott hereby moves to dismiss the *Hunte* amended complaint on all of the same grounds on which it moved to dismiss the *Ferry* fourth amended complaint and opposed leave to file the *Ferry* fifth amended complaint. This Court does not need dozens more pages of briefing on arguments that it has already heard and decided, regarding a second nearly identical complaint written by the same lawyers. Abbott therefore requests that this Court apply the *Ferry* ruling here.

In other words, this Court should (a) dismiss all misrepresentation and breach of warranty claims with prejudice; (b) defer ruling on preemption of design defect claims; and (c) if the failure

---

[3] *Hunte*, unlike *Ferry*, also includes two claims for loss of filial consortium, but it describes them as completely "derivative of each of the [complaint's other] claims." (Am. Compl. Count Four ¶ 2; Count Five ¶ 2.) They should be dismissed for the same reasons that the claims on which they are based should be dismissed.

[4] In *Hunte*, the specific items of marketing are found at Am. Compl. ¶¶ 27, 33, 38–41, 48–50, 56, 60–63. In *Ferry*, they are found at Proposed Fifth Am. Compl., Dkt. 107-2 ¶¶ 204–05, 209–12, 215–17, 223, 227, 228–30.

to warn claim survives argument II in this motion (below), stay that claim until after the Connecticut Supreme Court decides the learned intermediary issue. Aside from the few issues discussed below, there is no difference between *Ferry* and *Hunte* that could justify treating them differently with regard to Abbott's arguments for dismissal.

The same is true with regard to Abbott's arguments to strike. In *Ferry*, after plaintiff accused Abbott of killing babies for profit, Abbott moved to strike those assertions. This Court granted the motion, describing those statements as having "no value." (*Ferry*, Dkt. 82, Hr'g Tr. at 52: 10–14.) Plaintiff then sought leave to file a fifth amended complaint that repeatedly made, in substance, the very same assertion, while also expanding the length of the complaint materially and unnecessarily, and making new improper allegations. Abbott moved for sanctions.

In the present case, Plaintiffs' counsel *again* asserts that Abbott seeks to profit by intentionally harming infants. Some of the same language that was identified in Abbott's motion for sanctions in *Ferry* appears in the amended complaint here. The offending paragraphs are 27, 143, 151, 152(F)(b), and 184.

This Court does not need further briefing on whether counsel is correct to ignore this Court's order in *Ferry* and continue to make these valueless but scandalous and inflammatory allegations. Abbott respectfully requests pursuant to Rule 12(f) that the paragraphs identified above be stricken.

## II.     Plaintiffs admit the infant's injuries were not caused by any failure to warn.

As the Court knows, the parties dispute whether Abbott was responsible for warning the parents (as Plaintiffs argue) or the infant's doctors (as the learned intermediary doctrine dictates). That issue will be the subject of this Court's certification to the Connecticut Supreme Court. But if one assumes that Plaintiffs are right, their failure to warn claim should be dismissed.

Under Connecticut law, a failure to warn claim requires plaintiffs to show "that if adequate warnings or instructions had been provided, the claimant would not have suffered the harm." Conn. Gen. Stat. § 52-572q(c); *see also Batoh v. McNeil-PPC*, 167 F. Supp. 3d 296, 315 (D. Conn. 2016) (showing "that a defective warning caused [plaintiff's] injuries" is an "essential element of her failure-to-warn claim"). Here, Plaintiffs have admitted that additional warnings to the parents could not have prevented any harm to the infant.

Plaintiffs do not allege they ever saw the warnings Abbott gave. For that reason, it could not matter if Abbott had given even more warnings—Plaintiffs would not have seen those, either. The supposedly missing warnings to parents therefore cannot have caused the infant any harm. *E.g., Karavitis v. Makita U.S.A.,* 243 F. Supp. 3d 235, 254 (D. Conn. 2017) (no additional warning was required because the plaintiff "admit[ted] that he did not read" the product's safety instructions).

In addition, even without seeing any of Abbott's warnings, Plaintiffs already knew that they did not want the doctors to administer cow milk formula. In fact, their complaint against the hospital admits that the mother "expressly instructed that her baby not be fed cow-based products." (Ex. 1 ¶ 9.) Having already refused to allow the infant to be fed cow milk formulas, Plaintiffs cannot plausibly assert that if only the parents had received additional warnings, they would have known to refuse that feeding. That feeding occurred, the parents assert, because the hospital decided to disregard the mother's clear instructions, and the doctors made the decision to use formula. (*Id*. ¶ 12; Am. Compl. ¶ 175.) Those admissions show that Abbot had no duty to warn, and no additional warnings to Plaintiffs could have prevented any injury. The failure to warn claim should be dismissed.

**III.     Plaintiffs cannot state a claim based on Abbott's marketing.**

In addition to asserting several theories of liability under the Product Liability Act (Am. Compl. Count One ¶ 152), the amended complaint also asserts causes of action for intentional misrepresentation (Count Two) and violation of the Unfair Trade Practices Act (Count Three). Both are based on Abbott's formula marketing. Neither states a claim.

**A.     The Product Liability Act preempts Plaintiffs' marketing claims.**

The Product Liability Act states that "[a] product liability claim … shall be in lieu of all other claims against product sellers … for harm caused by a product." Conn. Gen. Stat. § 52-572n. It defines a product liability claim, in turn, to include "all claims … caused by the … marketing … of any product," including but not limited to "all actions based on … misrepresentation." *Id*. § 52-572m(b). This "exclusivity provision makes the product liability act the exclusive means by which a party may secure a remedy for an injury caused by a defective product." *Gerrity v. R.J. Reynolds Tobacco*. 263 Conn. 120, 126 (2003).

There can be no doubt that Counts Two and Three attempt to allege a claim for injuries that stem from a product's marketing. Those counts use the term "marketing" or "marketed" a total of thirty-six times. They allege that "[a]s a result of the marketing," the infant was fed Abbott's formulas, which led to "Necrotizing Enterocolitis and death." (Am. Compl. ¶¶ 169–72.) And they allege that "[h]ad Defendant not engaged" in its marketing, the infant "would not have been fed the product, and would not have incurred related injuries." (*Id*. Count Three ¶ 6.) Plaintiffs' claims flow from injuries that supposedly resulted from doctors administering the formulas (*id*. Count Three ¶¶ 16, 18), so the Product Liability Act preempts them, and they should be dismissed.[5]

---

[5] *E.g. Provost-Daar v. Merz N. Am.,* 2014 WL 1193481, at *5 (Conn. Super. Ct.) (striking unfair trade practices claim); *Childs v. Uplift Mobility Prods.*, 2010 WL 796754, at *1–4 (Conn. Super. Ct.) (same); *Whitting v. Eli Lily*, 2007 WL 2757122, at *1 (Conn. Super. Ct.) (same).

The only allegation that is *not* connected to the infant suffering an injury from being administered the formulas is that Abbott's marketing somehow increased the formulas' prices. (Am. Compl. Count Three ¶¶ 12–15, 17.) But this Court will note that Plaintiffs **never** allege that they paid for any formula. That is because the hospital bought it. Plaintiffs cannot assert a claim based on the prices of formulas they never bought.

### B. Abbott's marketing caused no injury.

As this Court's decision in *Ferry* recognizes, allegations about marketing are irrelevant when (1) the marketing is not about a formula fed to the infant, and (2) the parents did not see or rely on the marketing. (*Ferry*, Dkt. 87 at 42–43, 42 n.27.) Those two points show that Plaintiffs here cannot state a claim.

The amended complaint makes allegations about products that were never administered to this infant. One example is Similac Advance. (Am. Compl. ¶ 36.) The only allegations that mention any formula this infant received are about NeoSure. (*Id.* ¶¶ 56–60, 73–74.)

But those NeoSure allegations flunk the second part of the analysis, which asks if the parents saw and relied on that marketing. Two of the NeoSure statements were found—as the amended complaint *admits*—through Google searches, which were obviously run by counsel shortly before the pleading was filed. (*Id.* ¶¶ 56, 59–60.) Plaintiffs do not allege that they ever saw these statements before the infant was fed NeoSure. Nor do Plaintiffs allege they ever saw the other NeoSure statements, which were found on an Abbott website. (*Id.* ¶¶ 57–58, 73–74.) Again, that website was obviously reviewed when counsel was gathering materials for the amended complaint, not by Plaintiffs over three years ago.

Plaintiffs' failure to allege they ever saw or relied on any of these NeoSure statements was no oversight. The amended complaint never alleges the father saw *any* Abbott marketing. And it *admits* that the mother was "exposed" to only "some" of the marketing it describes. (*Id.* ¶ 165.) It

9

notes the particular items to which she was exposed—and they do not include anything about NeoSure. (*Id.* ¶¶ 166–68.) It is impossible for Plaintiffs to state valid claims for misrepresentation or unfair trade practices based on statements they never saw or relied on, so Counts Two and Three should be dismissed.

### C. Abbott did not engage in an unfair trade practice.

Plaintiffs' unfair trade practice claim centers on one issue: whether Abbott promotes its infant formulas for premature infants as equal or superior to human breast milk. (Am. Compl. Count Three ¶¶ 2, 12-13.) There is no allegation that Abbott actually made that bald statement, so Plaintiffs are left to argue that Abbott somehow implied it. No fair reader could conclude that Abbott did.

On the same website the amended complaint cites, Abbott makes clear that infant formula is only "the second-best way to nourish your baby."[6] "[B]reastfeeding provides the best nutrition for babies … It is our policy not to market infant formula in a way that competes with breastfeeding."[7] Abbott's marketing policy, also set forth on its websites, is as follows: "Advertisement and promotion cannot state or imply any superiority of formula feeding to breastfeeding … All promotional materials for Infant Formula should not be presented in a way that discourages parents or caregivers from breastfeeding or feeding breast milk to their Infants."[8]

---

[6] Formula Feeding—The Basics And Beyond, *available at* https://prod8-similac-2015-com.abbottnutrition.com/baby-feeding/formula, attached hereto as Ex. 2.

[7] Our Commitment to Responsible Marketing of Infant Formula and Breast Milk Substitutes (June 2020), *available at* https://static.abbottnutrition.com/cms-prod/abbottnutrition-2016.com/img/Infant-Formula-Marketing-Commitment-OnePager-FINAL-061820.pdf, attached hereto as Ex. 3.

[8] Our Global Policy on the Marketing of Infant Formula, at 8 (Sept. 2020), *available at* dam.abbott.com/en-us/documents/pdfs/transparency/Global-Infant-Formula-Marketing-Policy.pdf, attached hereto as Ex. 4.

Rather than discourage breastfeeding, as Plaintiffs allege, Abbott encourages it and provides breast feeding education for parents of premature infants.[9] And, in collecting recent postings on Abbott's website, Plaintiffs' counsel failed to include the following: "If your baby is born prematurely, understanding that mother's own breastmilk is best for your baby is key to delivering not only nutrients, but also … immune-protective factors. And since ***breastmilk protects against NEC***, work closely with your baby's physician and dietitian to understand how to support a good breastmilk supply, so that your preterm baby gets as much breastmilk as possible."[10] In short, Plaintiffs cannot state a deceptive trade practice claim by falsely portraying Abbott's policies and marketing as discouraging breast feeding.

## **CONCLUSION**

This Court should (1) dismiss with prejudice all misrepresentation, breach of warranty, and Connecticut Unfair Trade Practices Act claims; (2) defer ruling on preemption of design defect claims; (3) dismiss with prejudice the failure to warn claim, or stay it until after the Connecticut Supreme Court decides the learned intermediary issue in *Ferry*; and (4) strike the paragraphs of the amended complaint identified above.

---

[9] Breastfeeding tips & techniques: Providing Breast Milk for Your Premature Baby, *available at* static.abbottnutrition.com/cms-prod/abbottnutrition-2016.com/img/PROVIDING%20BREAST%20MILK%20FOR%20YOUR%20PREMATURE%20BABY_tcm1226-145466.pdf, attached hereto as Ex. 5; *see also* Tools for Patient Care: Our Commitment to Breastfeeding Education, *available at* abbottnutrition.com/tools-for-patient-care/breastfeeding-education.

[10] The Role of HMOs in Reducing NEC (July 22, 2020), *available at* nutritionnews.abbott/pregnancy-childhood/prenatal-breastfeeding/the-promising-role-of-hmos-in-reducing-risk-of-nec/, attached hereto as Ex. 6 (emphasis added).

Dated: April 1, 2021             ABBOTT LABORATORIES, INC.

By: */s/ John J. Robinson*
    John J. Robinson (ct14802)
    Kelcie B. Reid (ct30550)
    Gordon Rees Scully Mansukhani, LLP
    95 Glastonbury Boulevard, Suite 206
    Glastonbury, CT 06033
    (860) 494-7505
    (860) 560-0185 (fax)
    Email: jjrobinson@grsm.com
    Email: kreid@grsm.com

    Stephen V. D'Amore (admitted *pro hac vice*)
    Scott P. Glauberman (admitted *pro hac vice*)
    Bryce A. Cooper (admitted *pro hac vice*)
    Winston & Strawn LLP
    35 West Wacker Drive
    Chicago, IL 60601
    (312) 558-5600
    (312) 558-5700 (fax)
    Email: sdamore@winston.com
    Email: sglauberman@winston.com
    Email: bcooper@winston.com

    *Attorneys for Abbott Laboratories, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of April, 2021 the foregoing document was filed electronically and served by mail on anyone able to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECMF System.

*/s/ John J. Robinson*

John J. Robinson